UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

SIOUX FALLS REGIONAL              )
AIRPORT AUTHORITY                 )        MDL No.: 2873
                                  )        Master Docket No.: 218-mn-2873
                Plaintiff,        )
                                  )        JUDGE RICHARD GERGEL
vs.                               )
                                  )        Civil Case No.: 2:19-cv-1850-RMG
3M COMPANY, E. I. DUPONT DE       )
NEMOURS AND COMPANY, THE          )
CHEMOURS COMPANY LLC,             )        DIRECT FILED COMPLAINT AND
DOWDUPONT, INC., DUPONT           )        JURY DEMAND PURSUANT TO
CHEMICAL SOLUTIONS ENTERPRISE,    )        CASE MANAGEMENT ORDER NO. 3
THE CHEMOURS COMPANY FC, LLC,     )
CHEMGUARD, INC., TYCO FIRE        )
PRODUCTS LP, THE ANSUL            )
COMPANY, JOHNSON CONTROLS         )
INTERNATIONAL, PLC,               )
KIDDE-FENWAL, INC.,               )
KIDDE PLC, INC., KIDDE FIRE       )
FIGHTING, INC., UTC FIRE &        )
SECURITY AMERICAS CORPORATION,    )
INC., NATIONAL FOAM, INC., ANGUS  )
INTERNATIONAL SAFETY              )
GROUP, LTD., ANGUS FIRE ARMOUR    )
CORPORATION, BUCKEYE FIRE         )
EQUIPMENT COMPANY,                )
DYNEON LLC, ARKEMA, INC.,         )
ARKEMA FRANCE, S.A., SOLVAY       )
SPECIALTY POLYMERS, USA, LLC,     )
UNITED TECHNOLOGIES               )
CORPORATION, CHUBB FIRE, LTD.,    )
and JOHN DOE DEFENDANTS 1-49      )
                                  )
                Defendants.       )

## **COMPLAINT**

Plaintiff, the Sioux Falls Regional Airport Authority ("Plaintiff"), by and through its

undersigned counsel, brings this action against Defendants, 3M Company, E. I. DuPont De

Nemours and Company, The Chemours Company LLC, DowDuPont Inc., DuPont Chemical Solutions Enterprise, The Chemours Company FC LLC, Chemguard, Inc., Tyco Fire Products LP, The Ansul Company, Johnson Controls International, plc, Kidde-Fenwal, Inc., Kidde PLC, Inc., Kidde Fire Fighting, Inc., UTC Fire & Security Americas Corporation, Inc., National Foam, Inc., Angus International Safety Group, Ltd., Angus Fire Armour Corporation, Buckeye Fire Equipment Company, Dyneon, LLC, Arkema, Inc., Arkema France, S.A., Solvay Specialty Polymers, USA, LLC, United Technologies Corporation, Chubb Fire, Ltd., and John Doe Defendants 1-49 (collectively, "Defendants"), and alleges as follows:

## I.    SUMMARY OF THE CASE

1.    Plaintiff brings this action against Defendants to recover any and all past and future compensatory and/or consequential damages for the investigation, remediation, removal, disposal, and monitoring of the ongoing contamination of its surface, groundwater, soil, and sediment caused and/or created by Defendants' products, as well as any and all punitive damages available as a result of the actions and/or inactions of Defendants.

2.    Plaintiff is the owner and operator the Sioux Falls Regional Airport, also known as Joe Foss Field ("Airport" or "Plaintiff's Property"), which is a public and military joint-use airport.  The Airport was constructed on its present site in 1937.

3.    Since the late 1940s, a portion of the Airport has been leased to the South Dakota Air National Guard.

4.    At various times from the 1960s through today, Defendants manufactured, marketed, and/or sold aqueous film-forming foam ("AFFF"), a firefighting agent used to control and extinguish Class B fuel fires.

5.     Defendants' AFFF contained per- and polyfluoroalkyl substances ("PFAS"), specifically, perfluorooctanoic acid ("PFOA") and/or perfluorooctane sulfonic acid ("PFOS"), and/or contained the precursors of PFOA and PFOS.

6.     PFOA and PFOS are manufactured compounds that are toxic and persistent in the environment, do not biodegrade, move readily through soil and groundwater, and pose a significant risk to human health and safety.

7.     Defendants manufactured, marketed and/or sold AFFF with the knowledge that these toxic compounds would be released into the environment during fire protection, training, and response activities even when the AFFF was used as directed and intended by the manufacturer.

8.     At all times pertinent herein beginning decades ago and, upon information and belief, continuing to this date, AFFF containing PFOS and/or PFOA has been used and stored at the Airport for fire protection, training, and response activities at the Airport.  Upon information and belief, at all times pertinent herein, AFFF has been used and stored in connection with activities conducted by the City of Sioux Falls, as well as by the South Dakota Air National Guard all of which took place at numerous locations on the property of the Airport.  During these activities, AFFF was used as directed and intended by the manufacturer, which allowed PFOA and PFOS to enter the environment.  When sprayed onto outdoor surfaces as intended, these compounds migrated through the soil and into the groundwater, thereby contaminating Plaintiff's Property.

9.     As a result of the use of AFFF for its intended purpose, PFOS and PFOA have been detected in groundwater of Plaintiff's Property at substantial levels.  Accordingly, upon

information and belief, there are multiple areas on the Airport Property, including land, water, and structures, that have been contaminated with PFOS and/or PFOA through the use of AFFF.

10.     Plaintiff's Property has been, and continues to be, contaminated by Defendants' PFOA and/or PFOS.

11.     At all times pertinent herein, Plaintiff did not know nor should it have known of the ongoing contamination of its Property through the use of AFFF as Defendants did not disclose the toxic nature and harmful effects of the AFFF which Defendants designed, manufactured and sold with PFOA and/or PFOS.

12.     Through this action, Plaintiff seeks to recover compensatory and/or consequential damages for all past and future costs to investigate, remediate, remove, dispose of, and monitor PFOS and PFOA contamination on Plaintiff's Property and groundwater caused by the use of Defendants' AFFF containing PFOA and/or PFOS on Plaintiff's Property, as well as any and all punitive damages recoverable under South Dakota and/or applicable federal laws.

13.     Plaintiff also seeks damages and restitution for the diminution of value of Plaintiff's Property, as well as reasonable attorneys' fees and costs.

## II.     PARTIES

14.     Plaintiff is an independent governing body, existing under the laws of the State of South Dakota, with its principal address at 2801 Jaycee Lane, Sioux Falls, South Dakota 57104. Plaintiff has overall administrative, development and operational responsibility for the Airport.

15.     Defendant 3M Company (f/k/a Minnesota Mining and Manufacturing Company) ("3M") is a corporation organized and existing under the laws of the State of Delaware and authorized to conduct business in South Dakota, with its principal place of business located at 3M Center, St. Paul, Minnesota 55144.  At all times relevant, 3M manufactured, marketed,

promoted, distributed, and/or sold AFFF containing PFOA and/or PFOS used to fight fires at numerous military bases, airports, and other locations throughout the country.

16.     3M is the only company that manufactured and/or sold AFFF containing PFOS.

17.     Defendant E. I. DuPont De Nemours and Company ("DuPont") is a corporation organized and existing under the laws of the State of Delaware and authorized to do business in South Dakota, with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805.

18.     Defendant The Chemours Company LLC ("Chemours") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 1007 Market Street, Wilmington, Delaware 19899.  Chemours does business throughout the United States, including conducting business in South Dakota.

19.     In 2015, DuPont spun off its "Performance Chemicals" business to Chemours, along with certain environmental liabilities. Upon information and belief, at the time of the transfer of its Performance Chemicals business to Chemours, DuPont had been sued, threatened with suit and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and injuries arising from the manufacture and sale of PFAS compounds and products that contain PFAS compounds.

20.     Defendant DowDuPont Inc. ("DowDuPont") is a Delaware corporation with its principal places of business at 974 Centre Road, Wilmington, Delaware 19805 and 2211 H.H. Dow Way, Midland, Michigan 48674.  DowDuPont is the resulting parent entity from the merger of Dow Chemical Company and DuPont that became effective August 31, 2017. DowDuPont is the parent of DuPont and, upon information and belief, is liable for damages set forth herein.

21.     DuPont Chemical Solutions Enterprise ("DuPont Chemical") is a Delaware Corporation, with a principal place of business located at 1007 Market Street Wilmington, Delaware 19898.

22.     Defendant The Chemours Company FC LLC ("Chemours FC"), successor in interest to DuPont Chemical Solutions Enterprise, is a Delaware Corporation and conducts business throughout the United States. Its principal place of business is 1007 Market Street Wilmington, Delaware, 19899.

23.     Defendant Chemguard, Inc. ("Chemguard") is a corporation organized and existing under the laws of the State of Wisconsin, with its principal place of business located at One Stanton Street, Marinette, Wisconsin 54143. Chemguard does business throughout the United States, including conducting business in South Dakota. This Defendant manufactured and sold AFFF that contained PFOA.

24.     Defendant Tyco Fire Products LP ("Tyco") is a limited partnership organized and existing under the laws of the State of Delaware and authorized to do business in South Dakota, with its principal place of business located at 1400 Pennbrook Parkway, Lansdale, Pennsylvania 19446. Tyco is an indirect subsidiary that is wholly owned by Johnson Controls International plc, an Irish public limited company listed on the New York Stock Exchange [NYSE: JCI].

25.     Tyco manufactures the Ansul brand of products and is the successor-in-interest to the corporation formerly known as The Ansul Company ("Ansul") (hereinafter, Ansul and/or Tyco as the successor-in-interest to Ansul will be referred to collectively as "Tyco/Ansul"). At all times relevant, Tyco/Ansul manufactured, marketed, promoted, distributed, and/or sold fire suppression products, including AFFF, that contained fluorocarbon surfactants containing PFAS.

26.     Defendant The Ansul Company (hereinafter "Ansul") is a Wisconsin corporation, with its principal place of business at One Stanton Street, Marinette, Wisconsin 54143.

27.     Defendant Johnson Controls International, plc ("Johnson Control") is a Wisconsin corporation having a principal place of business at 5757 N. Green Bay Avenue, Milwaukee, Wisconsin 53209.  Johnson Controls, Inc., through mergers and/or acquisitions, is responsible for AFFF sold under the names Ansul Company, Chemguard and/or Tyco Fire Products.

28.     Defendant Kidde-Fenwal, Inc. ("Kidde-Fenwal") is a corporation organized under the laws of the State of Delaware, with its principal place of business located at One Financial Plaza, Hartford, Connecticut 06101.  Kidde-Fenwal is the successor-in-interest to Kidde Fire Fighting, Inc. (f/k/a Chubb National Foam, Inc. f/k/a National Foam System, Inc.) (collectively, "Kidde/Kidde Fire").  Kidde-Fenwal does business throughout the United States, including conducting business in South Dakota.

29.     Defendant Kidde PLC, Inc. ("Kidde PLC") is a foreign corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at One Carrier Place, Farmington, Connecticut 06034. Upon information and belief, Kidde PLC was formerly known as Williams Holdings, Inc. and/or Williams US, Inc.

30.     Defendant Kidde Fire Fighting, Inc. ("Kidde Fire") is a Pennsylvania corporation with principal offices at 400 Main Street, Ashland, Massachusetts 01721.  Upon information and belief, Kidde Fire was formerly known as National Foam, Inc., National Foam System, Inc., and/or Chubb National Foam, Inc.

31.     Defendant UTC Fire & Security Americas Corporation, Inc. (f/k/a GE Interlogix, Inc.) ("UTC") is a North Carolina corporation with its principal place of business at 3211

Progress Drive, Lincolnton, North Carolina 28092.  Upon information and belief, Kidde-Fenwal, Inc. is part of the UTC Climate Control & Security unit of United Technologies Corporation.

32.     Defendant National Foam, Inc. ("National Foam") is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 141 Junny Road, Angier, North Carolina 27501.  National Foam manufactures the Angus brand of products and is the successor-in-interest to Angus Fire Armour Corporation (collectively, "National Foam/Angus Fire").  National Foam/Angus Fire does and/or has done business throughout the United States, including conducting business in South Dakota.  This Defendant manufactured and sold AFFF that contained PFOA.

33.     Defendant Angus International Safety Group, Ltd. ("Angus International") is a foreign private limited company, with offices at Station Road, High Bentham, Near Lancaster, United Kingdom LA2 7NA. Upon information and belief, Angus International is registered in the United Kingdom with a registered number of 8441763.

34.     Defendant Angus Fire Armour Corporation ("Angus Fire") is a Delaware corporation, with its principal offices at 141 Junny Road, Angier, North Carolina 27501.  Upon information and belief, Angus International is the corporate parent of National Foam and Angus Fire.

35.     Defendant Buckeye Fire Equipment Company ("Buckeye") is a foreign corporation organized and existing under the laws of the State of Ohio, with its principal place of business at 110 Kings Road, Mountain, North Carolina 28086.  This Defendant manufactured and sold AFFF that contained PFOA.

36.     Defendant Dyneon, LLC ("Dyneon") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 6744 33rd Street N, Oakdale, Minnesota 55128.

37.     Defendant Arkema, Inc. is a corporation organized and existing under the laws of the State of Pennsylvania, with and does business its principal place of business at 900 1st Avenue, King of Prussia, Pennsylvania 19406.  Arkema, Inc. is an operating subsidiary of Defendant Arkema France, S.A.

38.     Defendant Arkema France, S.A. is a publicly traded foreign corporation having its principal place of business in Colombes, France.  Arkema France, S.A. is the parent corporation of Defendant Arkema, Inc.  Arkema France, S.A. and Arkema, Inc. are collectively referred to herein as "Arkema."

39.     Defendant Solvay Specialty Polymers, USA, LLC ("Solvay"), is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 4500 McGinnis Ferry Road, Alpharetta, Georgia 30005.

40.     Defendant United Technologies Corporation ("United Technologies") is a foreign corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 8 Farm Springs Road, Farmington, Connecticut 06032.

41.     Defendant Chubb Fire, Ltd. ("Chubb") is a foreign private limited company, with offices at Littleton Road, Ashford, Middlesex, United Kingdom TW15 1TZ. Upon information and belief, Chubb is registered in the United Kingdom with a registered number of 134210. Upon information and belief, Chubb is or has been composed of different subsidiaries and/or divisions, including but not limited to, Chubb Fire & Security Ltd., Chubb Security, PLC, Red Hawk Fire & Security, LLC, and/or Chubb National Foam, Inc.

42.    Upon information and belief, Defendants John Doe 1-49 were manufacturers and/or sellers of AFFF.  Although the identities of the John Doe Defendants are currently unknown, it is expected that their names will be ascertained during discovery, at which time Plaintiff will move for leave of this Court to add those individuals' actual names to the Complaint as Defendants.

43.    The foregoing Defendants, including the John Doe Defendants, all were manufacturers and/or or sellers of AFFF containing PFOS and/or PFOA who, on information and belief, manufactured, distributed, and/or sold AFFF containing PFOS and/or PFOA that was used on the Plaintiff's Property.

44.    When the term "Defendants" is used alone, it refers to all Defendants named in this Complaint jointly and severally.  Any and all references to a Defendant or Defendants in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates, and divisions of the named Defendants.  When reference is made to any act or omission of the Defendants, it shall be deemed to mean that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation, or control of the affairs of Defendants, and did so while acting within the scope of their employment or agency.

### III.    JURISDICTION AND VENUE

45.    This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because complete diversity exists between Plaintiff and Defendants and the amount in damages exceeds the minimal jurisdictional limits of this Court.

46.    Venue is appropriate in this judicial district pursuant to this Court's Case Management Order No. 3 ("CMO 3").  Plaintiff states that but for CMO 3 permitting direct filing in the United States District Court for the District of South Carolina, Plaintiff would have filed this Complaint in the United States District Court for the Southern District of South Dakota. Further, in accordance with CMO 3, Plaintiff hereby designates the United States District Court for the Southern District of South Dakota as the "Home Venue" as this case may have originally been filed there.

47.    Venue is proper in the United States District Court for the Southern District of South Dakota pursuant to 28 U.S.C. § 1391 because it is the judicial district in which Plaintiff is a resident and citizen, a substantial part of the property that is the subject this action is situated in this judicial district, and a substantial part of the events or omissions giving rise to this action occurred in this judicial district.

## IV.    FACUTAL ALLEGATIONS

### A.    THE CONTAMINANTS: PFOA & PFOS

48.    PFOA and PFOS are two chemicals within a class known as perfluoroalkyl acids ("PFAAs").  PFAAs are part of a larger chemical family known as per- and polyfluoroalkyl substances ("PFAS").  PFAA is composed of a chain of carbon atoms in which all but one of the carbon atoms are bonded to fluorine atoms, and the last carbon atom is attached to a functional group.  The carbon-fluorine bond is one of the strongest chemical bonds that occur in nature which is why these molecules are so persistent and bioaccumulate.

49.    PFAAs are sometimes described as long-chain and short-chain, depending on the number of carbon atoms contained in the carbon chain.  PFOA and PFOS are considered long-chain PFAAs because they each have eight carbon atoms in their chains.

50.    PFOA and PFOS are stable, man-made chemicals.  They are highly water soluble, persistent in the environment and resistant to biologic, environmental, or photochemical degradation.  Because these compounds are water soluble and do not readily adsorb to sediments or soil, they tend to stay in the water column and can be transported long distances.

51.    PFOA and PFOS are readily absorbed in animal and human tissues after oral exposure and accumulate in the serum, kidney, and liver.  They have been found globally in water, soil, and air as well as in human food supplies, breast milk, umbilical cord blood, and human blood serum.[1]

52.    PFOA and PFOS are persistent in the human body and resistant to metabolic degradation.  A short-term exposure can result in a body burden that persists for years and can increase with additional exposures.[2]

53.    Since they were first produced, information has emerged showing negative health effects caused by exposure to PFOA and PFOS.

54.    According to the EPA, "…studies indicate that exposure of PFOA and PFOS over certain levels may result in…developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney), liver effects (e.g., tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects and other effects (e.g., cholesterol changes)."[3]

---

[1] *See* Agency for Toxic Substances and Disease Registry, Per- and Polyfluoroalkyl Substances and Your Health, available at https://www.atsdr.cdc.gov/pfc/health_effects_pfcs.html.

[2] *See* EPA, Drinking Water Health Advisory for Perfluorooctanoic Acid (PFOA), EPA Document Number: 822-R-16-005 (May 2016) at 55; Drinking Water Health Advisory for Perfluorooctane Sulfonate (PFOS), EPA Document Number: 822-R-16-004 (May 2016) at 55, both available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.

[3] *See* "Fact Sheet PFOA & PFOS Drinking Water Health Advisories," EPA Document Number: 800-F-16-003, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.

55.     The EPA has also warned that there is suggestive evidence of the carcinogenic potential for PFOA and PFOS in humans.[4]

56.     The EPA has noted that "drinking water can be an additional source [of PFOA/PFOS in the body] in the small percentage of communities where these chemicals have contaminated water supplies."  In communities with contaminated water supplies, "such contamination is typically localized and associated with a specific facility, for example […] an airfield at which [PFOA/PFOS] were used for firefighting."[5]

57.     PFOS and/or PFOA are primary components of AFFF as used for its intended purposes on Plaintiff's Property.

**B.      THE PRODUCT: AQUEOUS FILM-FORMING FOAM**

58.     AFFF is a water-based foam that was first developed in the 1960s to extinguish flammable liquid fuel fires at airports, among other places.

59.     The AFFF made by Defendants contained either or both PFOA and PFOS.

60.     The AFFF produced, marketed, and/or sold by 3M was the only AFFF produced from fluorochemicals manufactured through electrochemical fluorination ("ECF"), a process that generates PFOS.  All other Defendants used telomerization to produce AFFF.  Fluorochemicals synthesized through telomerization degrade into PFOA, but not PFOS.

61.     AFFF can be made without PFOA and PFOS.  Fluorine-free foams do not release PFOA and/or PFOS into the environment.  Despite knowledge of this fact as well as knowledge of the toxic nature of AFFF made with PFOA and PFOS, defendants continued to manufacture,

---

[4] *See* "Health Effects Support Document for Perfluorooctane Sulfonate (PFOS)" U.S. Environmental Protection Agency Office of Water Health and Ecological Criteria Division, EPA Document Number: 822 R-16-002, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.
[5] *See* "Fact Sheet PFOA & PFOS Drinking Water Health Advisories," EPA Document Number: 800-F-16-003, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.

distribute and/or sell AFFF with PFOA and/or PFOS which led to the ongoing contamination and damages on Plaintiff's Property.

62.     AFFF is used to extinguish fires, particularly fires that involve petroleum or other flammable liquids.  AFFF is typically sprayed directly onto a fire, where it then works by coating the ignited fuel source, preventing its contact with oxygen, and suppressing combustion.

63.     When used as the Defendants intended and directed, the AFFF sold to and utilized at the Airport released PFOA and/or PFOS into the environment.

64.     Once PFOA and PFOS are free in the environment they do not hydrolyze, photolyze, or biodegrade under typical environmental conditions, and they are extremely persistent in the environment.  As a result of their persistence, they are widely distributed throughout soil, air, and groundwater.

65.     Defendants' AFFF containing PFOS and/or PFOA has been used for its intended purpose in the process of fire protection, training, and response activities at the Airport for many years.  During these activities, AFFF was used as directed and intended by the manufacturer, which allowed PFOA and PFOS to enter into and onto Plaintiff's Property where these compounds migrated through the subsurface and into the groundwater, thereby contaminating the surface, soil, sediment and groundwater, as well as causing other extensive and ongoing damages at the Airport.

66.     Due to the chemicals' persistent nature, among other things, these chemicals have, and continue to, cause injury and damage to Plaintiff's Property.

C.     DEFENDANTS' KNOWLEDGE OF PFOA AND PFOS HAZARDS

67.     On information and belief, by the 1970s, Defendants knew, or reasonably should have known, among other things, that: (a) PFOA and PFOS are toxic; and (b) when sprayed in

14

the open environment per the instructions given by the manufacturer, PFOA and PFOS migrate

through the subsurface, mix easily with groundwater, resist natural degradation, render drinking

water unsafe and/or non-potable, and can be removed from public drinking water supplies only

at substantial expense.

68.    At all times pertinent herein, Defendants also knew or should have known that

PFOA and PFOS present a risk to human health and could be absorbed into the lungs and

gastrointestinal tract, potentially causing severe damage to the liver, kidneys, and central nervous

system, in addition to other toxic effects, and that PFOA and PFOS are known carcinogens that

cause genetic damage.

69.    In 1980, 3M published data in peer reviewed literature showing that humans

retain PFOS in their bodies for years. Based on that data, 3M estimated that it could take a

person up to 1.5 years to clear just half of the accumulated PFOS from their body after all

exposures had ceased.[6]

70.    By the early 1980s, the industry suspected a correlation between PFOS exposure

and human health effects. Specifically, manufacturers observed bioaccumulation of PFOS in

workers' bodies and birth defects in children of workers.

71.    In 1981, DuPont tested for and found PFOA in the blood of female plant workers

in Parkersburg, West Virginia. DuPont observed and documented pregnancy outcomes in

exposed workers, finding two of seven children born to female plant workers between 1979 and

---

[6] *See* Letter from 3M to Office of Pollution Prevention and Toxics, EPA titled "TSCA 8e Supplemental Submission, Docket Nos. 8EHQ-0373/0374 New Data on Half Life of Perfluorochemicals in Serum," available at http://www.ewg.org/research/dupont-hid-teflon-pollution-decades.

1981 had birth defects—one an "unconfirmed" eye and tear duct defect, and one a nostril and eye defect.[7]

72.     Beginning in 1983, 3M documented a trend of increasing levels of PFOS in the bodies of 3M workers. In an internal memo, 3M's medical officer warned, "we must view this present trend with serious concern. It is certainly possible that [...] exposure opportunities are providing a potential uptake of fluorochemicals that exceeds excretion capabilities of the body."[8]

73.     Notwithstanding their respective  knowledge of the dangers of AFFF made with PFOA and/or PFOS, Defendants negligently and carelessly: (1) designed, manufactured, marketed, and/or sold AFFF containing PFOA and/or PFOS; (2) issued instructions on how AFFF should be used and disposed of (namely, by washing the foam into the soil), thus improperly permitting PFOA and/or PFOS to contaminate the soil and groundwater in and around the Airport; (3) failed to recall and/or warn users of AFFF, negligently designed products containing or degrading into PFOA and/or PFOS, of the dangers of soil and groundwater contamination as a result of the standard use and disposal of these products; and, (4) further failed and refused to issue the appropriate warnings and/or recalls to the users of AFFF containing PFOA and/or PFOS, notwithstanding the fact that Defendants knew the identity of the purchasers of the AFFF containing PFOA and/or PFOS.

74.     As a direct result of Defendants' acts alleged in this Complaint, Plaintiff's Property has been contaminated and will continue to be contaminated with PFOA and PFOS, creating an environmental and public health hazard, unless such contamination is remediated. As a direct and proximate result, Plaintiff must assess, evaluate, investigate, monitor, remove, clean

---

[7] *See* Memorandum "C-8 Blood Sampling Results, Births and Pregnancies," available at http://www.ewg.org/research/dupont-hid-teflon-pollution-decades.
[8] *See* Memorandum "Organic Fluorine Levels," August 31, 1984, available at http://www.ewg.org/research/dupont-hid-teflon-pollution-decades.

up, correct, and remediate PFOA and PFOS contamination on its property at significant expense, loss and damage.

75.    Defendants had and breached their duty to evaluate and test such products adequately and thoroughly to determine their environmental fate and transport characteristics and potential human health and environmental impacts before they sold such products.  They also had and breached their duty to minimize the environmental harm caused by PFOA and PFOS. Moreover, defendants failed to warn Plaintiff of the known risks for environmental and health hazards arising from using AFFF with PFOA and/or PFOS in its intended manner for its intended purpose.

## D.    THE IMPACT OF PFOA AND PFOS ON PLAINTIFF'S PROPERTY

76.    PFOA and PFOS have been detected in varying amounts, at varying times in soil and water extracted from the Airport.  PFOA and PFOS have been detected and/or are present in certain of areas of the Airport.  It is the contention of Plaintiff that any detectible level of PFOA and/or PFOS in its soil, surface water, groundwater, well water, or elsewhere on its property requires investigation, remediation and monitoring. With that said, PFOA and PFOS have been detected at the Airport at levels that are substantially greater than the current federally advised Health Advisory Level. The detection and/or presence of PFOA and PFOS, and the threat of further detection and/or presence of PFOA and PFOS, in Plaintiff's Property in varying amounts and at varying times has resulted, and will continue to result, in significant injuries and damage to Plaintiff.

77.    Upon information and belief, the invasion of Plaintiff's Property with PFOA and PFOS is recurring—new contamination flows regularly and constantly onto the Airport each day, resulting in new harm to the property and Plaintiff on each occasion.

78.     The injuries to Plaintiff caused by Defendants' conduct constitute an unreasonable interference with, and damage to, the Plaintiff's Property. Plaintiff's interests in protecting its property constitute a reason for seeking damages sufficient to restore such property to its pre-contamination condition.

## FIRST CAUSE OF ACTION

### STRICT LIABLITY – DEFECTIVE DESIGN

79.     Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

80.     Defendants were engaged in the business of researching, designing, manufacturing, testing, distributing, marketing, and selling products containing PFOS and/or PFOA.

81.     Defendants marketed and sold AFFF containing PFOS and/or PFOA for use in controlling and extinguishing aviation, marine, fuel and other flammable liquid fuel fires.

82.     Defendants represented, asserted, claimed, and warranted that their AFFF products could be used in conformity with accompanying instructions and labels in a manner that would not cause injury or damage.

83.     As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and marketers of AFFF containing PFOA and/or PFOS, Defendants owed a duty to all persons whom Defendants' products might foreseeably harm, including Plaintiff, not to market any product which is unreasonably dangerous for its intended and foreseeable uses.

84.     The AFFF containing PFOA and/or PFOS used on Plaintiff's Property were used in a reasonably foreseeable manner and without substantial change in the condition in which the products were sold.

85.     Defendants knew, or should have known, that use of AFFF in its intended manner would result in the spillage, discharge, disposal, or release of PFOA and/or PFOS into or onto land with associated migration to groundwater.

86.     The AFFF containing PFOA and/or PFOS used on Plaintiff's Property was defective in design and unreasonably dangerous because, among other things: (a) PFOA and PFOS cause soil and groundwater contamination, even when used in their foreseeable and intended manner; (b) even at extremely low levels, PFOA and PFOS render drinking water unfit for consumption; (c) PFOA and PFOS pose significant threats to public health; and (d) PFOA and PFOS create real and potential damage to the environment.

## SECOND CAUSE OF ACTION

### STRICT LIABLITY – FAILURE TO WARN

87.     Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

88.     As manufacturers, distributors, suppliers, sellers, and marketers of products containing PFOA and/or PFOS, Defendants had a duty to issue warnings to Plaintiff, the public, water providers, and public officials of the risks posed by PFOA and PFOS.

89.     Defendants knew that PFOA and/or PFOS would be purchased, transported, stored, handled, and used without notice of the hazards that PFOA and PFOS pose to human health and the environment.

90.     Defendants breached their duty to warn by unreasonably failing to provide Plaintiff, public officials, Downstream Handlers, and/or the general public with warnings about the potential and/or actual contamination of the environment by PFOA and PFOS, despite Defendants' knowledge that PFOA and PFOS were real and potential threats to the environment.

91.     AFFF containing PFOA and/or PFOS purchased or otherwise acquired from Defendants was used, discharged, and/or released into or onto Plaintiff's Property.

92.     AFFF containing PFOA and/or PFOS was used in a reasonably foreseeable manner and without substantial change in the condition in which the product was sold.

93.     AFFF containing PFOA and/or PFOS used on Plaintiff's Property was defective in design and unreasonably dangerous for the reasons set forth above.

94.     Despite the known and/or foreseeable environmental and human health hazards associated with the use and/or disposal of PFOA and/or PFOS on Plaintiff's Property, including contamination of Plaintiff's Property and groundwater with PFOA and/or PFOS, Defendants failed to provide adequate warnings of, or take any other precautionary measures to mitigate, those hazards.

95.     In particular, Defendants failed to describe such hazards or provide any precautionary statements regarding such hazards in the labeling of their PFOA and/or PFOS.

96.     As a direct and proximate result of Defendants' above-described failure to give warnings, PFOA and/or PFOS have: (a) posed and continue to pose a threat to Plaintiff's Property; (b) contaminated and continue to contaminate Plaintiff's Property; (c) required and/or will continue to require the investigation and monitoring of the soil and groundwater for PFOA and/or PFOS contamination; and (d) will require remediation of PFOA and/or PFOS contamination or, where remediation is impracticable, removal and disposal of the contaminated property.

## THIRD CAUSE OF ACTION

### PUBLIC NUISANCE

97.    Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

98.    Defendants manufactured, distributed, marketed, and/or promoted their products containing PFOS and/or PFOA in a manner that created, or participated in creating, a public nuisance that unreasonably endangers or injures the property, health, safety, and comfort of the general public and Plaintiff, causing inconvenience and annoyance.

99.    Defendants, by their acts and omissions set forth above have, among other things, knowingly unleashed long-lasting and still spreading PFOA and/or PFOS contamination and threat of contamination to Plaintiff's Property.

100.    Actual and threatened PFOA and/or PFOS contamination caused by Defendants' conduct has caused, and continues to cause, injury to Plaintiff in the form of present and serious interference with the use, benefit, and/or enjoyment of its property in a way that an ordinary, reasonable person would find is a substantial inconvenience and annoyance.

101.    Defendants' conduct has also injured, and continues to injure, the property, health, safety, and/or comfort of a considerable number of persons, including a considerable number of persons in Sioux Falls, South Dakota who utilize and/or work at the Airport.

102.    PFOA and PFOS contamination constitute current, as well as prospective, public nuisances.

103.    Defendants knew or, in the exercise of reasonable care, should have known that the use and introduction of PFOA and/or PFOS into the environment would and has

continuously, unreasonably and seriously endangered and interfered with the ordinary safety, use, benefit, and enjoyment of Plaintiff's Property.

## FOURTH CAUSE OF ACTION

### PRIVATE NUISANCE

104.    Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

105.    Plaintiff's Property has been contaminated by PFOA and/or PFOS as a direct and proximate result of the acts and omissions of Defendants as set forth above.

106.    PFOA and/or PFOS contamination caused by Defendants' conduct has damaged Plaintiff's Property and interfered with the ordinary safety, use, benefit, and enjoyment of Plaintiff's property.

## FIFTH CAUSE OF ACTION

### TRESPASS

107.    Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

108.    Plaintiff is the owner and/or actual possessor of the Airport property and the ground water and other relevant structures located thereon. Defendants knew, or in the exercise of reasonable care should have known, that PFOA and/or PFOS contaminates soil, surface, and groundwater, including the property and other rights of Plaintiff.

109.    Defendants failed to properly warn against the use of AFFF such that they proximately caused and continue to cause PFOA and/or PFOS to contaminate Plaintiff's Property, including but not limited to its soil, surface, groundwater, and other structures located thereon.

110.    The contamination of Plaintiff's Property has varied over time and has not yet ceased.  PFOA and/or PFOS continue to migrate into and enter Plaintiff's Property.  The contamination is reasonably abatable.

111.    Plaintiff has not consented to, and does not consent to, this contamination.

112.    Defendants knew or reasonably should have known that Plaintiff would not consent to this trespass.

113.    As a direct and proximate result of the trespass, Plaintiff has been damaged and is entitled to abate the trespass and other damages including, but not limited to, diminution in property value, loss of use and enjoyment, cost of bringing the property to its original condition, investigation, remediation, treatment, and/or to such other appropriate relief.

## SIXTH CAUSE OF ACTION

### NEGLIGENCE

114.    Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

115.    As manufacturers, refiners, formulators, distributors, suppliers, sellers, marketers, shippers, and/or handlers of PFOA and/or PFOS products, Defendants owed a duty to Plaintiff, as well as to all persons whom Defendants' products might foreseeably harm, to exercise due care in the instructing, labeling, and warning of the handling, control, use, and disposal of PFOA and/or PFOS products.

116.    Despite the fact that Defendants knew that PFOA and PFOS are toxic, can contaminate soil and water resources, and present significant risks to human health, Defendants negligently: (a) designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted, and/or sold PFOA and/or PFOS-containing products; (b) issued instructions

on how AFFF containing PFOA and/or PFOS should be used and disposed of, thus improperly

permitting PFOA and/or PFOS to enter and contaminate Plaintiff's Property; (c) failed to recall

and/or warn the users of AFFF containing PFOA and/or PFOS of the dangers of soil and

groundwater contamination as a result of standard use and disposal of this product; and (d) failed

and refused to issue the appropriate warnings and/or recalls to the users of AFFF containing

PFOA and/or PFOS regarding the proper use and disposal of these products, notwithstanding the

fact that Defendants knew the identity of the purchasers of the AFFF.

117.    As a direct and proximate result of Defendants' acts and omissions as set forth

above, Plaintiff's Property has been, and continues to be, contaminated with PFOA and PFOS,

causing Plaintiff significant injury and damage.

Furthermore, as a direct and proximate result of Defendants' aforementioned acts and omissions,

Plaintiff has incurred, is incurring, and will continue to incur significant costs and damages

resulting from and associated with the contamination of the Airport by Defendants' AFFF made

with PFOA and PFOS.

## SEVENTH CAUSE OF ACTION

### CIVIL CONSPIRACY

118.    Plaintiff realleges and reaffirms all allegations set forth in the preceding

paragraphs.

119.    At all times relevant to this lawsuit, Defendants actually knew of the hazards that

PFOA and PFOS posed to the environment, including Plaintiff's Property.

120.    Beginning in the 1960s and continuing through the date of the filing of this

Complaint, Defendants agreed to engage in unlawful and wrongful acts that caused damage to

the Plaintiff. Each Defendant performed at least one overt act in furtherance of this conspiracy.

Specifically, Defendants colluded for the avowed purpose of providing information about AFFF products containing PFOA and/or PFOS to the public and the government, with the true, unlawful purpose of:

    a.  intentionally misrepresenting to the EPA and the public that AFFF containing PFOA and/or PFOS was safe and did not pose a risk to human health and the environment;

    b.  concealing the dangers of AFFF containing PFOA and/or PFOS, including the products' characteristics and their propensity to contaminate soil and groundwater, from the government and public by, among other means, repeatedly misrepresenting how products containing PFOA and/or PFOS were being disposed of;

    c.  concealing the dangers of PFOA and/or PFOS from consumers and the public; and

    d.  using their considerable resources to fight legislation concerning PFOA and PFOS.

121.    As a direct and proximate result of Defendants' conspiracy, Defendants' AFFF products at all times relevant to this litigation have:

    a.  posed and continue to pose a threat to Plaintiff's Property;

    b.  contaminated and will continue to contaminate Plaintiff's Property;

    c.  contaminated and will continue to contaminate the soil, surface and groundwater on and within the vicinity of Plaintiff's Property;

    d.  required and will continue to require testing and monitoring of Plaintiff's Property for PFOA and PFOS contamination;

e.   required or will require remediation of PFOA and PFOS contamination or, where remediation is impracticable or insufficient for Plaintiff, removal and disposal of the contamination;

f.   diminished Plaintiff's confidence in, and the use and enjoyment of, Plaintiff's Property;

g.   diminished Plaintiff's Property value due to actual, impending, and/or threatened PFOA and PFOS contamination; and

h.   caused and/or will cause Plaintiff to sustain substantially increased damages and expenses resulting from the loss of the safety, use, benefit and/or enjoyment of its property.

## EIGHTH CAUSE OF ACTION

### FRAUDULENT TRANSFER (DUPONT AND CHEMOURS)

122.   Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

123.   Plaintiff seeks equitable and other relief pursuant to the Uniform Fraudulent Transfer Act against DuPont.

124.   Upon information and belief, in February 2014, DuPont formed The Chemours Company as a wholly-owned subsidiary, and used it to spin off DuPont's "Performance Chemicals" business line in July 2015.

125.   Upon information and belief, at the time of the spinoff, DuPont's Performance Chemicals division contained the AFFF and/or PFAS business segments.  In addition to the transfer of the Performance Chemicals division, Chemours accepted broad assumption of liabilities for DuPont's historical use, manufacture, and discharge of PFAS.

126.    Upon information and belief, at the time of the transfer of its Performance Chemicals business to Chemours, DuPont had been sued, threatened with suit and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and injuries from the manufacture and sale of PFAS compounds and products that contain PFAS compounds.

127.    Upon information and belief, as a result of the transfer of assets and liabilities described in this Complaint, DuPont limited the availability of assets to cover judgements for all of the liability for damages and injuries from the manufacture and sale of PFAS compounds and products that contain PFAS compounds.

128.    Upon information and belief, DuPont has (a) acted with intent to hinder, delay and defraud parties, or (b) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and (i) was engaged or was about to engage in a business for which the remaining assets of Chemours were unreasonably small in relation to the business; or (ii) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

129.    Upon information and belief, DuPont engaged in acts in furtherance of a scheme to transfer its assets out of the reach of parties, such as the Plaintiff, that have been damaged as a result of DuPont's actions as described in this Complaint.

130.    Upon information and belief, DuPont and Chemours acted without receiving a reasonably equivalent value in exchange for the transfer of obligations, and DuPont believed, or reasonably should have believed, that it would incur debts beyond Chemours' ability to pay as they became due.

131.    Plaintiff seeks to avoid the transfer of DuPont's liabilities for the claims brought in this Complaint and to hold DuPont jointly and severably liable for any damages or other remedies that may be awarded by this Court or a jury under this Complaint.

132.    Plaintiff further reserves such other rights and remedies that may be available to it as may be necessary to fully compensate Plaintiff for the damages and injuries it has suffered as alleged in this Complaint.

## PUNITIVE DAMAGES

133.    Under the applicable laws of the State of South Dakota, Plaintiff herein further seeks Punitive damages due to the wanton and willful acts and/or omissions of Defendants as set forth and alleged throughout this Complaint.

## PRAYER FOR RELIEF

Plaintiff prays for judgment against Defendants, jointly and severally, as follows:

1.    Compensatory damages according to proof including, but not limited to:

a.  costs and expenses related to the past, present, and future investigation, sampling, testing, and assessment of the extent of PFOA and PFOS contamination on and within Plaintiff's Property;

b.  costs and expenses related to the past, present, and future treatment and remediation of PFOA and PFOS contamination of Plaintiff's Property or, in the alternative, the costs and expenses associated with and related to the removal and disposal of the contamination; and

c.  costs and expenses related to the past, present, and future installation and maintenance of monitoring mechanisms to assess and evaluate PFOA and PFOS on and within Plaintiff's Property.

2.      Punitive damages;

3.      Consequential damages;

4.      Costs, disbursements and attorneys' fees of this lawsuit;

5.      Pre-judgment and post-judgment interest; and

6.      Any other and further relief as the Court deems just, proper, and equitable.

<u>**DEMAND FOR JURY TRIAL**</u>

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a jury trial.

Dated: June 28, 2019

Respectfully submitted,

Scott Summy
(Texas Bar No. 19507500)
**BARON & BUDD, P.C.**
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219-4281
Telephone: (214) 521-3605
Fax: (214) 520-1181
Cary McDougal
(Texas Bar No. 13569600)
Carla Burke Pickrel
(Texas Bar No. 13569600)
Cristina Sanchez
(Texas Bar No. 24041856)

-  and  -

**COSSICH, SUMICH,
PARSIOLA & TAYLOR LLC**
8397 Highway 23, Suite 100
Belle Chasse, LA 70037-2648
Telephone: (504) 394-9000
Fax: (504) 394-9110
Philip F. Cossich, Jr.
(Louisiana Bar No. 1788)
Darren Sumich
(Louisiana Bar No. 23321)

David A. Parsiola
(Louisiana Bar No. 21005)
Brandon J. Taylor
(Louisiana Bar No. 27662)
Christina M. Cossich
(Louisiana Bar No. 32407)
Luana N. Smith
(Louisiana Bar No. 35534)

-  and  -

**JOHNSON, JANKLOW,
ABDALLAH & REITER, LLP**
101 South Main Avenue, Suite 100
Sioux Falls, SD 57104
Telephone: (605) 338-4304
Fax: (605) 338-4162
Steven Johnson
(South Dakota Bar No. 2181)
Shannon Fallon
(South Dakota Bar No. 3258)